E-FILED
Tuesday, 03 April, 2018  03:02:34 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

Fabian Brandon, )
Plaintiff, )
)
vs. )Case No. _____
)
John Baldwin, Director ) Jury trial demanded
of the Illinois Depart- )
ment of Corrections, et al., )
)
Defendant(s) )

SCANNED at PCC and E-Mailed
4/3/18 (date) by VK (initials)
208 (# of pages)

## COMPLAINT

■ 42 U.S.C. §1983 (suit against state officials for constitutional violations)

▢ 28 U.S.C. § 1331 (suit against federal officials for constitutional violations)

▢ Other

_____

___

*Please note:  This form has been created for prisoners but can be adapted for use by non-prisoners.*

Now comes the plaintiff, Fabian Brandon , and states as follows:

My current address is: P.O. Box 99, Pontiac, Illinois 61764

1. The defendant John Baldwin , is employed as the Director of the IL. Department of Corrections at 1301 Concordia Court, Springfield IL 62794-9277

2. The defendant Marcus Hardy , is employed as the Deputy Director of the IL. Dept. of Corr. at 1301 Concordia Court, Springfield, IL 62794-9277

3. The defendant Michael P. Melvin , is employed as Warden of Pontiac Correctional Center at P.O. Box 99, Pontiac, IL 61764

4. The defendant Randy S. Pfister , is employed as Warden of Pontiac Correctional Center at P.O. Box 99, Pontiac, IL 61764

(revised 9/96)

5. The defendant Susan Prentice , is employed as Major of North Segregation Unit at P.O. Box 99, Pontiac, IL 61764

Additional defendants and addresses Continue on next page

For additional plaintiffs or defendants, provide the information in the same format as above on a separate page.

## LITIGATION HISTORY

A. Have you brought any other lawsuits in state or federal court dealing with the same facts involved in this case?        Yes    ☐    No    ■

If yes, please describe

_____

_____

_____

B. Have you brought any other lawsuits in state or federal court while incarcerated?

Yes    ■    No    ☐

C. If your answer to B is yes, how many?  2   Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper using the same outline.)

1. Parties to previous lawsuit:

Plaintiff(s)    One, Fabian Brandon

Defendant(s)    Several, I don't remember exactly, Warden Page, et al., and Warden Gregory Lambert

2. Court (if federal court, give name of district; if state court, give name of county)

6. R. Snyder, Intel Officer, P.O. Box 99, Pontiac, IL 61764

7. G. Kochel, Intel Officer, P.O. Box 99, Pontiac, IL 61764

8. Motteler, Warden of Pontiac, C.C., P.O. Box 99, Pontiac, IL 61764

9. Berry # 9623, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

10. Eilts, Correctional Counselor, P.O. Box 99, Pontiac, IL 61764

11. Zook, Correctional Lieutenant, P.O. Box 99, Pontiac, IL 61764

12. Miller, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

13. Baily, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

14. Rodriguez, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

15. Schmelt, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

16. Terri Anderson, Administrative Review Board member, P.O. Box 19277, Springfield IL 62794-9277

17. Billie W. Greer, Administrative Review Board member, P.O. Box 19277, Springfield, IL 62794-9277

18. Sherry Benton, Administrative Review Board member, P.O. 1977, Springfield, IL 62794-9277

19. Sharon A. Simpson, Grievance Officer, P.O. Box 99, Pontiac, IL 61764

20. K. Sandlin, Correctional Grievance Officer, P.O. Box 99, Pontiac, IL 61764

21. Chad M. Brown, Adjustment Committee Chairperson, P.O. Box 99, Pontiac, IL 61764

22. Aberardo A. Salinas, Adjustment Committee member, P.O. Box 99, Pontiac, IL 61764

23. Lisa Qualls, Administrative Review Board member, P.O. Box 1977, Springfield, IL 62794-9277

3.

24. Bayler, Correctional Counselor, P.O. Box 99, Pontiac, IL 61764

25. Lovell, Correctional Counselor, P.O. Box 99, Pontiac, IL 61764

26. Unknown, Correctional Sgt., of North Seg., (7-3 shift.) — 9/30/14, P.O. Box 99, Pontiac, IL 61764

27. Edwards, Correctional Officer, P.O. Box 99, Pontiac, IL 61764

28. Alley, Mental Health staff, P.O. Box 99, Pontiac, IL 61764

29. Lanterman, Mental Health Staff, P.O. Box 99, Pontiac, IL 61764

30. Kelly Hagg, Mental Health Staff, P.O. Box 99, Pontiac, IL 61764

31. MOSS, Mental Health staff, P.O. Box 99, Pontiac, IL 61764

32. Thompson, Mental Health staff, P.O. Box 99, Pontiac, IL 61764

33. Unknown, Health Care Administrator, P.O. Box 99, Pontiac, IL 61764

34. Joel Diers, Legal Counsel of the Illinois Department of Corrections, P.O. Box 19277, Springfield, IL 62794

35. Scott T. Holte, Adjustment Committee chair person, P.O. Box 99, Pontiac, IL 61764

36. Vickie K. Kendrick, Correctional Officer/Adjustment Committee member, P.O. Box 99, Pontiac, IL 61764

37. Gladyse C. Taylor, Director of IDOC, P.O. Box 19277, Springfield, IL 62794-9277

38. T. Scott Keen, Administrative Review Board member, P.O. Box 19277, Springfield, IL 62794-9277

39. Unknown, North Seg., Lt. (11/12/14; 3-11 shift), P.O. Box 99, Pontiac, IL 61764

40. Unknown, North Seg., Lt. (11/15/14; 3-11-shift),
    P.O. Box 99, Pontiac, IL 61764

ALL THE ABOVE DEFENDANTS
ARE SUED IN THEIR INDIVIDUAL
AND OFFICIAL CAPACITY.

Southern district; and Cook County

3. Docket Number/Judge

Southern district I don't remember; CookCounty 2013 MR 000956

4. Basic claim made

excessive force and deliberate indifference; Retaliation

5. Disposition (That is, how did the case end. Was the case dismissed? Was it appealed? Is it     still pending?)

Lost   Jury trial; Cook County still pending

6. Approximate date of filing of

lawsuit 1996, and 2012

7. Approximate date of disposition

1997

For additional cases, provide the above information in the same format on a separate page.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

A. Is there a grievance procedure available at your institution?   Yes ■   No ▢

B. Have you filed a grievance concerning the facts relating to this complaint?   Yes ■

No ▢   If your answer is no, explain why not

_____

_____

C. Is the grievance process completed?   Yes ■   No ▢

*PLEASE NOTE:  THE PRISON LITIGATION REFORM ACT BARS ANY*

6.

## STATEMENT OF CLAIM

Place of the occurrence  Pontiac Correctional Center

Date of the occurrence  September, 2014 – November, 2016

Witnesses to the occurrence  15, not including Correctional Staff that will be called.

*State here briefly the FACTS that support your case. Describe how EACH defendant is involved.*
*Do not give any legal arguments or cite cases or statutes. Number each claim in a separate paragraph.*
*Unrelated claims should be raised in a separate civil action.*

**THE COURT STRONGLY URGES THAT YOU USE ONLY THE SPACE PROVIDED.**

1. Plaintiff restates and incorporates by reference each and every allegation set forth in the aforementioned sections in this complaint.

2. Plaintiff is a short-term population prisoner currently housed at Pontiac Correctional Center (P.C.C.), a maximum security facility.

3. The gravamen of this multi-claim complaint is that Plaintiff has been conspicuously denied rights, and privileges, and subjected to cruel and unusual punishment (and other such constitutional violations/deprivations) due to the named Defendants conspiracy to illegally use the administrative discipline policy through means of retaliation.

4. Title 20 of the Illinois Administrative code: Corrections, Criminal Justice, and Law Enforcement; Chapter 1: Department of corrections; Subchapter(e): Operations, Part 504: Discipline and Grievances; Subpart A: Administration of Discipline and Subpart F: Grievance Procedures for offenders provides an outline of responsibilities and duties beheld to IDoc staff. These rules, procedures and, due process safeguards are outlined to properly guide staff in their everyday discipline of prisoners and to properly remedy grievances.

5. However, at P.C.C. the discipline directives/

7.

policy are use as a means of retaliation with utter disregard to the due process safeguards to place a prisoner in punitive segregation (seg.), revoke his good conduct credit/statutory good time (GCC/SGT) and his privileges for exercising the grievance process.

6. I.D.O.C. administrators and staff used the disciplinary directives/policy as a means of invoking a retaliatory psychological message upon him as a punishment for openly complaining to staff about the living conditions and for exercing his right to the redress of grievances wherein he spent, roughly, 970 days in Seg., and lost a total of 720 days of GCC/SGT at P.C.C.

Facts Related to September 24, 2014
Placement Under Investigative Status

7. As an Administrative Detention prisoner housed in the North Administrative Unit (NAD) at Pontiac. Plaintiff began complaints to prison staff verbally and through the filing of grievances with regards to the living conditions. Said complaints were ignored and grievances denied.

8. Left with virtually no other alternative, on June 2, 2014, Plaintiff filed a Freedom Of Information Request (FOIA) with the IDOC seeking a copy of Administrative Directive 05.12.101 consisting of general information about administrative detention. IDOC denied said request.

9. On July 13, 2014, Plaintiff appeal the decision to the Illinois Attorney General's office who declared that IDOC improperly with held said information and granted Plaintiff's request ordering IDOC to provide him a copy of

8.

Administrative Directive 05.12.101, Subject to the redaction of Section J. (See Exh. **A** : Office of Attorney General response dated January 30, 2017) However, on April 30, 2017, Plaintiff made another attempt to receive Said documents to no avail. I.DOC. has yet to to provide Said documents (See Exh. **AA**.)

10. From Plaintiff's Submittance of Said request on June 2, 2014, he continued filing grievances and complaining to staff, up to and during August 2014.

11. During the month of August while Deputy Director Hardy toured NAD, Plaintiff verbally complained to him about the living conditions and a host of other issues.

12. Deputy Diretor Hardy (Dir. Hardy) advised Plaintiff to bring Said issues to Assistant Warden Motteler (Warden Motteler) whom was standing beside him.

13. Plaintiff respectfully stated: "talking to her is like talking to that wall over there", making a reference to Warden Motteler.

14. Plaintiff went on explaining to Dir. Hardy how he has made serveral attempts to bring these conditions of confinement to P.C.C., Administrators to no avail.

15. Dir. Hardy urged Plaintiff to forward his concerns to Warden Pfister's office and, if nothing was done Dir Hardy would personally See that said issues were resolved.

16. Plaintiff relayed information to other prisoners on the gallery who also took it upon theirselves to forward their complaint to Warden Pfister's Office.

17. After the reception of complaints by Warden Pfister, a Memorandum was issued, dated September 22, 2014, Stating: "Due to the numerous letters I've received, I am re-issuing Warden's Memo, dated June 14, 2014". (Said memo is a memo wherein prisoner's privileges were unjustly taken away after said privileges had already been earned through good behaviour incentive programs) Nothing was done to fix the conditions of confinement.

18. On September 24, 2014, Plaintiff was told that he was being placed under investigation. Plaintiff was issued an Investigative report which was vague in nature and incomplete, all it stated was for the "Safety and Security of the institution". He was handcuffed, removed from his cell (NAD #214) and escorted to the highly restrictive North Seg, unit cell (N#129), (See Exh. AAA)

19. Upon Plaintiff's placement in said cell he noticed the puddles of urine on the floor and urine soiled mattress and; feces smeared on the walls, the inside of the cells' steel plated door and the vent. The cell had no electrical outlets, no fire sprinkler system, the lights stay on 24/7, and the ceiling had cracks where yellowish, foul smelling water poured down from. C/o Schmelt, sarcasti-

Cally told Plaintiff "try grieving these conditions!"

20. Plaintiff was not given any bed sheets, blanket, toiletries, hygiene items, change of clothing, or any cleaning supplies whatsoever.

21. Due to the atrocious and inhuman living conditions that Plaintiff was being subjected to and not being able to eat due to the urine and feces spread throughout the cell, Plaintiff was forced to go on hunger strike.

22. Plaintiff was taken to the Health Care Unit on September 30, 2014 for vital exams and hunger strike documentation. (See Exh. **B** )

23. From the time of Plaintiff's placement in said cell he wrote grievances, counselor Eilts, Warden Pfister, Warden Motteler, Major Prentice, seeking their assistance and making them aware of the conditions that cell house staff placed him under to no avail. (See Exh's. A1, A2, B1, B2, B3, B4, B5.)

24. On October 1, 2014, Plaintiff came off of his hunger strike due to sickness (i.e., head aches, stomach pains, double and blurred vision, weakness and severe pain and dryness in throat.)

25. After being returned to his cell (N129) Plaintiff spoke to Lt. Zook during his cell house rounds and told him about his living conditions. Lt. Zook stated: "you're not in NAD anymore, that's how it is over here, so get use to it because it's going to be awhile."

**11.**

26. On October 2, 2014, c/o Miller had the gallery worker clean out cell N130 (inmate Robinson #R21491), which was in the same condition as Plaintiff's cell. Plaintiff asked c/o Miller if he could have the worker clean his cell as well and was told that there wasn't enough time.

27. Plaintiff was finally able to obtain an indigent hygiene bag by c/o Rodriguez, that consisted of : 1- toothbrush, 4- 10mL size packs of shampoo and 2- 2"x1"x¼" bars of soap after 8-days of being in the urine and feces infested cell. Yet and still, Plaintiff remained without toilet paper, or, more importantly, cleaning supply.

28. On October 3, 2014, Plaintiff was given the opportunity to shower. Plaintiff did not have shower shoes, a bath towel, or wash cloth and asked c/o Baily to procure these items for him so that he could shower. c/o Baily stated: "Where the fuck do you think you're at, in NAD? We don't do that shit over here, buy some from commissary."

29. Plaintiff was then escorted to a 3'x3'x10' filthy bath stall that was back- flooded with clumps of hair, toe nail clippings and disposed of shampoo and toothpaste packs, with soap scum and mildew on the stalls walls and, a number of gnats flying within. Plaintiff was provided with nothing more than a plastic bag by c/o Schmelt to stand on wherein he was constantly slipping and bumping into the filthy walls. As a result of having to shower in such unsanitary conditions Plaintiff contracted some type of skin rash and fungous infection on his feet.

30. Throughout the day of October 3, 2014, Plaintiff

Continued to address staff (c/o Berry, c/o Schmelt, c/o Baily, and Mental Health Personnel (M.H.) Alley, about the cell conditions and what he was having to endure to no avail. (see various request slips and letters, at Exh. C1, C2, C3)

31. When Plaintiff addressed M.H. Alley, he was told that "he would be okay."

32. On October 6, 2014, when Plaintiff once again attempted to address Lt. Zook, Plaintiff was told "...there's nothing I can do."

<u>Facts Related to October 3, 2014</u>
<u>Disciplinary Report</u>

33. During Plaintiff's investigative confinement his property had been shaken down by Intel c/o Snyder. c/o Snyder confiscated 10 of Plaintiff's photos of family and falsly accussed Plaintiff of possessing and participating in "Security Threat Group" activity due to the possession of said photos, (it should be noted that this same intelligence unit was the same unit that allowed him to receive said photos as they are the ones charged with screening and authorizing his mail.)

34. After the confiscation of said photos Plaintiff was issued a disciplinary report (report) in violation of 504: - 205 Security Threat Group / Unauthorized Organizational Activity (STG) on October 6, 2014 (See Exh. A4.)

35. From the time Plaintiff was placed under investigation (9/24/14) he remained in the same urine and feces infested cell without any clothing, bedding, toilet paper, adequate hygiene items and cleaning supply.

36. On October 7, 2014 Plaintiff spoke to Lt. Rosenberger while he toured 1-gallery and complained

**13.**

to him about his conditions. Lt. Rosenberger ordered c/o Schmelt's to notify personal property. Plaintiff was finally provided with 1-bath towel, 1-was cloth, 2-pairs of socks, 2-pairs of boxers, 1-set of thermals, 2-T-shirts, 1 toothbrush, 2-regular size bars of soap and 1-laundry bag. Yet and still, c/o Schmelt's denied Plaintiff toilet paper, forcing him to continue using his own clothing to wipe himself.

37. On October 8, 2014, Plaintiff heard his 10/3/2014 report before the Institutional Adjustment Committee (Committee) at P.C.C. Plaintiff requested that the committee continue his hearing due to his inability to prepare his defense in written statement form because of his living conditions and lack of supply. Chair Person Scott T. Holte stated that his request would be granted (see exh. A5)

38. Plaintiff continued his attempts to remedy his conditions to no avail. Plaintiff sent various requests to have M.H. See him as his mental and physical state was quickly deterriorating due to the kicking and banging on steel doors, stench of feces and urine litered gallery, and yelling by the seriously mentally ill (SMI) prisoners housed on 1 and 3 gallery.

39. Plaintiff went into a deep state of depression and anxiety, weight loss, sleep deprivation, muscle spasims and back pain. Plaintiff's various requests, emergency grievances for treatment to mental health and health care went unanswered and grievances denied. (See exh's. D1 through D6)

40. Between the dates of October 9-10, 2014, Lt. Brewer from the NAD unit came to speak with Plaintiff

14.

about his AD placement. Plaintiff made him aware of his conditions. Lt. Brewer ordered cell house staff to remove him from his cell and to sanitize the cell and to provide him with clean bedding, a clean unsoiled mattress and toilet paper. Plaintiff was removed from his cell by C/O Miller and his cell was thoroughly cleaned and sanitized of the urine and fecal matter infestation 2-weeks after his placement in said cell.

41. On October 10, 2014, while Dir. Hardy, Warden — Motteler, and Major Hobart were touring 1-gallery, Plaintiff stopped Dir. Hardy and explained to him about his dire medical needs for the contraction of the skin rash and fungous infection on his feet from the unsanitary shower to no avail.

42. On October 12, 2014, Plaintiff received the Committee's final Summary Report finding him guilty for the 10/3/2014 report. Contrary to what Chair Person Lt. Holte and Committee member Kendrick told him at his hearing, the report stated that his request for a continuance had been denied, denying Plaintiff his due process right to present possibly exonerating evidence. (see exh. A6.)

43. Plaintiff filed his grievance on said issues after receiving his final Summary report. (See Exh. A7.)

44. On October 18, 2014, Plaintiff was finally given his personal property and noticed that Intel C/O Kochel went back in his storaged property that had already been shook down and stored and confiscated more of Plaintiff's photos. Plaintiff noticed that on 10/13/2014, after he had requested at his committee

hearing that the committee appoint him staff assistance to go in his stored property to witness that c/o Snyder left behind other photos of his family that he claimed were gang leaders in his report. (See Exh. A8)

### Facts Related to September 25, 2014 Disciplinary Report

45. On October 16, 2014, Plaintiff was again served with a disciplinary report authored by Intel c/o — Kochel. Plaintiff was cited for violation of DR 504: 110 - Impeding an Investigation and DR 504: 205 STG. (See Exh. H.)

46. Said report was the result of Plaintiff numerous complaints and grievances to staff and P.C.C. Administrators about the living conditions that went ignored and unanswered by prison officials.

47. Plaintiff heard his report before the committee at P.C.C. before chair Person Chad M. Brown and c/o Aberardo A. Salinas. On October 20, 2014. Plaintiff Objected to the committee's failure to produce the alleged letter at his hearing to give him the opportunity to challenge said allegations. Plaintiff further requested verbally that the committee view the alleged letter that was found as to the allegations of a "Protest" by means of a hunger strike. A written statement was also submitted. (See exh. H1)

48. From October 20, 2014 upto, and including December 2, 2014. Plaintiff continued to complain about his living conditions; Plaintiff continued to request

Mental Health and Medical treatment, all to no avail. During one of these instances of verbal complaint to Major Prentice. Plaintiff was told: "it's because you keep complaining and filing grievances that you're here. Maybe if you stopped filing grievances you wouldn't have to deal with this shit, and I'll move you." Plaintiff agreed, and on December 5, 2014, he was moved.

49. On, or about November 3, 2014, Plaintiff received his final summary report finding him guilty of charged offenses. Plaintiff was given 1-year C-grade, 1-year segregation, 1-year revocation of GCC/SGT, and 6-month contact visit restriction. (See exh. H2)

50. The basis for decision was that of the written report and the Reporting Officer (R/O) stating such "existed" with no independent investigation of any evidence by the committee or Hearing Investigator. Again Plaintiff was subjected to an arbitrary finding of guilt by the committee that relied on nothing more than "secondary" evidence in violation of his due process rights.

51. On December 12, 2014, Plaintiff filed his grievances on said issues after receiving his final summary Report. Plaintiff grievance (See exh. H3.) On December 15, 2014 Grievance Officer S. Simpson (G.O.) received said grievance. (See exh. H4.) On June 6, 2015, Plaintiff filed another grievance due to G.O. failure/refusal to respond to his grievance. Counselor Bayler responded, stating that the issue is not grievable (See exh. #1.) On June 9 —

17.

2015, Plaintiff appealed to the Administrative Review Board (A.R.B.) (See exh. #__2__ ) On June 29, 2015 ARB member Billie W. Greer responded, advising Plaintiff to contact his counselor Bayler, and G.O. S. Simpson to no avail. (See exh's. #__3__, #__4__ & #__5__.) On September 3, 2015, and on May 3, 2016, Plaintiff sent letters to ARB member Billie W. Greer informing him/her that Plaintiff has yet to receive a response to his grievance. (See exh's #__6__, and #__7__.) Plaintiff never received a response, however, he has done all he could to get his grievance answered.

<u>Facts Related to August 5, 2015</u>
<u>Disciplinary Report</u>

52. Throughout the course of Plaintiff's numerous verbal complaints and filing of grievances about the inhumane living conditions, prison staff continued to falsify reports against him to keep him in Seg., and discourage him from filing further complaints. Prison staff continued to place Plaintiff in Seg., exposing him to the atypical and significant hardships that he had been complaining about with deliberate indifference to his mental and physical health and basic human needs.

53. Plaintiff filed a number of grievances including but not limited to Discrimination (See exh. _E_ ); Official Misconduct, Equal Protection Violations (See - exh. _E1_.); Hazardous and Torturous Living Conditions, (See exh. _D4_.); Excessive Noise (See exh. _D3_);

18.

falsifying report (See exh. E2); and Due process vio-
lations to no avail.

54. On August 5, 2015, Plaintiff was again
given another falsified report with various allegations.
Mainly, that Plaintiff was attempting to "orchestrate" a
massive hunger strike due to the living conditions and
mistreatment by prison staff. (See exh. E3.)

55. Plaintiff went before committee
members Chad M. Brown — Chair person and C/o Aberardo —
A. Salinas on August 11, 2015 to hear his report.

56. Plaintiff objected to the hearing and asked
for a continuance due to him never receiving the actual
report and not being able to defend himself against said
allegations. Plaintiff's request was denied. (See exh.—
F.)

57. Plaintiff received his final Summary
report on August 23, 2015 (See exh. F1.) finding him
guilty of charged offense(s). The committee once
again conducted no actual independent investigation
into the allegations by Intel C/o Joyner. The commit-
tee relied on nothing more than "secondary" evi-
dence by way of the written report with no ac-
tual evidence to support the conclusion that the
Plaintiff spoke to or communicated with any
other prisoner(s) in any fashion, no time(s) date(s),
location(s) or that any event(s) occured, violating
Plaintiff's due process rights.

58. As a result of the finding of guilt,

Plaintiff received : 1-year C-grade, 1-year Seg, 6-months revocation of GCC/SGT, 3-months yard restriction, 9-months audio/visual restriction and 6-month contact visit restriction.

59. On October 3, 2015 Plaintiff filed a grievance (see Exh. **F3** ), alleging due process and retaliation wherein Plaintiff alleged that the entire hearing process is in violation of his rights. The Hearing Investigator (unknown), the committee, the reviewing office (unknown) all failed to follow their respective rules governing established procedures :

a. C/o Joyner (R/o) failed to provide the Plaintiff with notice of alleged investigation;

b. R/o failed to substantiate the charged offense(s) in her report. The report merely alleges that Confidential Sources (CS's) stated that Plaintiff was "actively engaging in STG activity."

c. The committee arbitrarily found Plaintiff guilty without establishing his guilt. The committee acted in bad faith by basing their findings solely on the R/o's vague, conclusory report.

d. The committee failed to : 1) review the evidence; 2) failed to conduct its own investigation, or its own independant evaluation into the alleged CS's vague, general accusations of Plaintiff's alleged misconduct; 3) failed to conduct an independent assessment into the credibility and reliability of the alleged CS's.

**e.** The Committee failed to question the R/O regarding the truthfulness and accuracy of the information provided by the alleged CS's.

**f.** The Committee failed to call the R/O before the committee to testify under Oath as to the credibility and reliability of the alleged CS's truthfulness.

**g.** The Committee failed to provide Plaintiff with an adequate statement as to the evidence relied on or reasons for the actions taken against Plaintiff; rather than pointing out the allegations upon which inferences were based, merely incorporated in the R/O's report. (See — exh. F1 .)

**h.** On October 24, 2016, Plaintiff received a response from ARB, member Sherry Benton recommending that Plaintiff's grievance be remanded back to Pontiac's Committee. Advising the committee to amend their basis for decision. Basically advising the Committee to add in their Summary "language" of the procedures in which they failed to follow in their initial process of Plaintiff hearing. Further violating Plaintiff's due process rights (see exh. G )

**i.)** On November 10, 2016 Plaintiff received a amended Summary from the committee with the added "lannguage" in which the A.R.B. advised the Committee to add to his Summary rather then providing him with a new hearing. (see exh.— G1 .)

J. On November 18, 2016, 15 months later after Plaintiff filed his grievance he received a finalized response from the A.R.B., denying his grievance. (See exh. G2.)

60. Plaintiff was forced to further endure the inhumane living conditions in the highly restrictive Seg., unit in the North Cell house due to his continued grievances and complaints to prison staff, Government Officials, lawyers, and prison advocate groups.

## Facts Related to all Living Conditions at the Pontiac Correctional Center

61. Plaintiff continued to suffer from depression; anxiety; sleep deprivation due to the excessive noise by SMI prisoners; stomach and hunger pains due to his inability to eat because of the unsanitary conditions in which food was served; physical deterrioration due to weight loss, muscle mass loss, muscle spasms, back and knee pain due to his confinement in Seg., and conditions thereof; the unlawful restriction of his yard privileges, inadequate ventilation wherein on November 7, 2014; November, - 15, 2014; December 3, 2014; and on December, - 4, 2014, Plaintiff was forced to suffer through the continuous spraying of chemical agents

22.

in cells adjacent from his by prison staff, and the smell of urine and feces being thrown on the galleries and swept-ed into his cell via-flooding by SMI prisoners flooding their cells wherein on November 12, 2014, and November-15, 2014, said flood water caused the thrown feces and urine to flow into Plaintiff's cell underneath his cell door. Inadequate shower conditions wherein Plaintiff was forced to stand in a 3' x 3' x 10' stall that often back flooded forcing him to stand in the murky water left by other prisoners containing clumps of hair, toe nail clippings, toothpaste and shampoo wrappers, spite, urine and soap scum and mildew on the shower walls where-in Plaintiff contracted aforementioned skin rash and foot fungous; being denied cleaning supplies to clean the hazardous fecal and urine laden flood water off his cell floor; being denied medical and health care treat-ment and mental health services; while Plaintiff receive yard privileges, he's forced to refuse due to him having to spend his yard time amongst SMI prisoners in sigle recreation dog-like cages with no form of bathroom or water supply wherein SMI prisoners in adjoining cages/pods would defecate on the floors and throw feces on other prisoners and also smear it all over the cages/pods sub-jecting other prisoners to said sickening conditions.

62. These are all conditions that he was not exposed to in NAD wherein he was housed prior to complaining and grieving the conditions in the

NAD unit.

63. On July 7, 2016 almost two(2) years later the Plaintiff was finally seen by psycologist and was offered psychotropic medication after examination (see exh. **J**.)

64. Due to Plaintiff's continuous exercise of his First Amendment right to the redress of grievances and verbal complaints to prison officials about his conditions of confinement, prison staff continues to conspire against him by falsifying reports and placing him in Seg., in retaliation.

65. As a result, Plaintiff served 970 days in Seg., lost 730 days of GCC/SGT - credit and detirriorated mentally and physically. Till this date, the atrocious and inhumane living conditions remain with no attempt by staff to address or remedy said issues.

Plaintiff's Claims for Relief

First Cause of Action:

66. Plaintiff incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein. As a result of the foregoing violations authorized and maintained by the Defendants, the Plaintiff have suffered and continue to suffer extreme harm and deprivations imposed in violation of the First, Eighth and Fourteenth Amendments protection against retaliation and

24.

cruel and unusual punishment. In addition, the extremely noisy, isolated, chemical agent filled, airless, flooded, foul odered, filthy, ancient, tiny cage in which plaintiff is housed deprives him of basic human needs, and in-flict needless mental and physical injuries. Defendants has violated his basic human dignity and his right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the United States Constitution.

67. Specifically Defendants has deprived Plaintiff of minimal Due process and civilized measure of life's necessities. The cumulative effects of extremely hazardous and torturous conditions of prolonged Confinement without access to human contact, a humane living environment and physical activity, constitute serious deprivation of basic human needs. Extreme prolonged deprivation of these basic needs is currently imposing and will continue to impose serious psychological pain and suffering and permanent psychological and physical injury on Plaintiff. Defendants has been deliberately indifferent to this pain and suffering caused by their unconstitutional actions that they inflict on Plaintiff. Plaintiff therefore seek declaratory and injunctive relief remedying these ongoing and systemic constitutional violations.

## Second Cause of Action:

68. Defendants has deprived Plaintiff of Due process when they falsely and illegally placed him in Seg., and revoked his GCC/SGT for exercising his First Amendment right to the redress of grievances.

69. Defendants deprived Plaintiff of his Eight Amendment right to be free from cruel and unsual punishment when they placed him in atypical and significant hardship wherein he was Subjected to Known gratuitous of Suffering by Defendants in retaliation for exercising his First Amendment right to the redress of grievances.

70. Because Defendants Knowingly and willfully conspired against Plaintiff to deny him of his Constitutional protected rights with malicious intent and deliberate indifference constitutes a liberty interest.

WHEREFORE, the Plaintiff respectfully request that the court grant the following relief:

A. Issue a Declaratory Judgment stating that Defendants acts and Omissions violated the Plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution and that these acts and omis-sions continue to cause ongoing violations of these rights;

B. Enter Preliminary injunctive relief, requiring Defendants to comply with the United States and Illinois

Constitutions and expunge the abovementioned reports from the Plaintiff's disciplinary record, restore his GCC/SGT of _720_ days, and furthermore, to reconsider all Plaintiff's requests for restoration of good time that was denied due to the above mentioned disciplinary reports.

C. Enter Preliminary injunctive relief, requiring the Defendants to comply with the Freedom of Information Act (FOIA) pursuant to Section 9.5(f)(5-ILCS 140/9.5(f)(west 2014) by providing Plaintiff with a copy of Administrative Directive 05.12.101, subject to the redaction of Section J pursuant to Section 7(1)(e) of FOIA that was improperly withheld from Plaintiff, and award Plaintiff a Judgment against Defendant(s) in their individual and official Capacity for intentionally withholding said document(s) from him for nominal, punitive, and compensatory damages, in an amount deemed fair and Just by the finder of fact, and cost.

D. Enter a writ of Certiorari, reversing all of the Defendants above described, arbitrary and Capricious decisions and actions by ordering the Defendants to vacate the above described disciplinary actions that was imposed on the Plaintiff, expunge the disciplinary reports from Plaintiff's record, and to reconsider all Plaintiff's requests for restoration of

good time that was denied without consideration due to the above mentioned reports. And deny the Defendants the opportunity to redress issues that were put forth in Plaintiff's grievances in which they failed/refused to address in their initial response and/or lack thereof.

    E. Enter Preliminary and Permanent injunctive relief requiring Defendant(s) (IDOC's Director), as well as his officers, agents, servants, employees, and any other person who acted in concert or who participated in the imposition and enforcement of facility and/or IDOC policies/regulations to take all actions necessary to end the ongoing constitutional violations described above by implementing measures and safe guards to prevent prisoners of being subjected to the abovementioned inhumane treatment and conditions. Plaintiff further request that the court appoint permanent monitors to ensure that all implemented measures and safe guards are being fully enforced.

    F. Enter Preliminary and Permanent injunctive relief requiring Defendant John Baldwin, as well as his officers, agents, servants, employees, and any other person who acted in concert or who participated in imposition and enforcement of facility and/or IDOC policies/regulations to take all actions necessary to end the practice of housing SMI prisoners amongst non-SMI prisoners, and to

28.

also end the practice of placing SMI prisoners in the same/adjoining recreational yard pods as non-SMI prisoners in the north Seg., unit, or in any other Seg. housing units that exposes non-mentally ill prisoners to the abovementioned conditions.

      G. Award the Plaintiff a Judgment against the Defendants in their individual and official capacity for nominal damages, in an amount deemed fair and just by the finder of fact.

      H. Award the Plaintiff a Judgment against the Defendants in their individual and official capacity for compensatory damages, in an amount deemed fair and just by the finder of fact.

      I. Award the Plaintiff a Judgment against the Defendants in their individual and official capacity for punitive damages, in an amount deemed fair and just by the finder of fact.

      J. Grant any other relief the court deems necessary and proper.

Dated: April 3, 2018

/s/ Fabian Brandon

Fabian Brandon #B10448
Pro Se Plaintiff
P.O. Box 99
Pontiac, IL 61764